IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMAZON CONTENT SERVICES, LLC, *et al.*, | § § | |
| PLAINTIFFS, | § § | CASE NO. 3:24-CV-733-L (BK) |
| v. | § § § | |
| WILLIAM FREEMON, *et al.*, DEFENDANTS. | § § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 36, this matter was referred to the undersigned magistrate judge for pretrial management. Before the Court is *Defendant's Motion to Set Aside Clerk's Entry of Default*, Doc. 83. As stated here, the motion should be **DENIED**.

### I. BACKGROUND

In March 2024, Plaintiffs—producers and distributors of movies and television programs—filed this action against Defendant William Freemon ("Freemon") and his company, Freemon Technology Industries LLC ("FTI")[1], alleging violations of the Copyright Act (17 U.S.C. § 101 et seq.). Doc. 1, ¶¶ 31–69. Following seven unsuccessful attempts at service, Plaintiffs moved for a 30-day extension and for authorization to effectuate alternative service of

---

[1] Plaintiffs also name as defendants the websites and domains allegedly used by Freemon to offer infringing services: instantiptv.net, streamingtvnow.com, streamingtvnow.net, tvnitro.net, cashappiptv.com, livetvresellers.com, stncloud.ltd, and stnlive.ltd. Doc. 1-1, ¶ 20.

process. Doc. 12. The Court granted the motion, and Plaintiffs subsequently served Defendants on June 20, 2024, in the manner authorized by the Court's Order. Doc. 17; Doc. 18.

On July 10, 2024, Freemon filed an answer purporting to appear on behalf of both himself and FTI. Doc. 19. However, because FTI, a legal entity, must be represented by licensed counsel, the Court struck Defendants' answer and ordered Freemon to file an amended answer individually, and FTI and the remaining Defendants to appear through counsel, by October 11, 2024. Doc. 24 at 2. The Court warned Defendants that the failure to comply or request an extension by this deadline "may result in the court imposing appropriate sanctions such as the striking of pleadings/defenses or the entry of default." Doc. 24 at 3.

After Defendants failed to appear by the deadline, Plaintiffs requested an entry of default pursuant to Federal Rule of Civil Procedure 55. Doc. 25. Freemon, despite not having entered a formal appearance, reemerged to oppose the request, asserting that he had demonstrated a clear intent to defend the action and that his delay in filing an amended answer was due to his "inability to afford counsel for the LLC," rather than willful neglect. Doc. 26. On March 18, 2025, in the absence of any formal appearance, the Clerk entered default against all Defendants. Doc. 55.

More than two months after the Clerk entered default, the Court ordered Defendants to move for Default judgment.² Doc. 58. Shortly thereafter, Freemon filed a motion for leave to file his individual answer, Doc. 60, along with several other motions. Doc. 59, Doc. 61; Doc. 62;

---

² This Court's Local Civil Rule 55.1 provides that, "[i]f a defendant has been in default for 90 days, the presiding judge may require the plaintiff to move for entry of a default and a default judgment. If the plaintiff fails to do so within the prescribed time, the presiding judge will dismiss the action, without prejudice, as to that defendant.

2

Doc. 63; Doc. 67.  On June 30, 2025, Plaintiffs filed their Motion for Default Judgment, Doc. 75, as directed by the Court.  Freemon, again appearing *pro se,* subsequently filed this motion to set aside the entry of default.  Doc. 83.

## II. APPLICABLE LAW

Rule 55 of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has fails to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).  By virtue of having a default entered against it, the defendant is deemed to have admitted the well-pleaded allegations in the complaint.  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  But a district court "may set aside an entry of default for good cause[.]" FED. R. CIV. P. 55(c).

In determining whether good cause exists, courts consider "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992) (citation omitted).  Courts may also consider other factors, including whether the defaulting defendant "acted expeditiously to correct the default." *Id.*  These factors are not "talismanic," and a court need not consider all of them in determining whether the defendant has shown "good cause." *Id.* at 184.  Indeed, "[a] finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (citing *Dierschke*, 975 F.2d at 184).

### III. ANALYSIS

Freemon argues that good cause exists to set aside the default entered against him because his failure to timely amend his original answer was neither "willful [n]or in bad faith," and he promptly sought leave to file a revised answer after the entry of default. Doc. 83 at 1-2. Plaintiffs respond that Freemon's failure to comply with the Court's orders, despite being aware of the consequences of noncompliance, demonstrates that his default was "plainly willful." Doc. 94 at 9. The Court agrees.

### A. Freemon's Failure to File an Amended Answer was Willful.

"A *willful default* is an 'intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d 359, 370 n.32 (5th Cir. 2008) (emphasis in original) (quoting *Lacy*, 227 F.3d at 292). By contrast, defaults resulting from excusable neglect are not willful. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (citation omitted). Excusable neglect is an "elastic concept" that is not limited circumstances beyond the movant's control, but also extends to "simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Alfarouqi v. Tri–Speed Inv., Inc.*, 2013 WL 5314436, at *3 (N.D. Tex. Sept. 23, 2013) (Lindsay, J.) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). For example, "late filings caused by inadvertence, mistake or carelessness" constitute excusable neglect. *Id.* (citations omitted). The defendant bears the burden of proving by a preponderance of the evidence that their neglect was excusable rather than willful. *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014).

Here, the undersigned finds that Freemon's default was willful. Freemon does not dispute that he had actual notice of the Court's Order, Doc. 24, directing him to file an amended

answer by October 11, 2024. *See* Doc. 83 at 1-2. Yet, he offers no explanation for why, despite knowing of the deadline, he neither filed an amended answer on his own behalf nor sought an extension of time to do so. Doc. 83 at 1-2. Instead, he merely asserts that, although he was aware of the order, he did not "fully understand" its "scope and effect . . . in light of his then-limited legal experience." Doc. 83 at 1. Even accepting this contention, it does not negate the willfulness of his default.

As the Fifth Circuit has made clear, "[m]ere confusion or lack of familiarity with the litigation process does not excuse [a defendant's] neglect of her responsibility to respond." *UnitedHealthcare Ins. v. Holley*, 724 F. App'x 285, 288-89 (5th Cir. 2018). Nor does a defendant's *pro se* status relieve him from complying with this Court's orders or the procedural rules. *Kaswatuka v. Dep't of Homeland Sec.*, 7 F.4th 327, 331 (5th Cir. 2021) (a "pro se party is in no way exempted from compliance with the relevant rules of procedure and substantive law); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted to excuse mistakes by those who proceed without counsel."). Although *pro se* litigants must generally be given an opportunity to cure procedural defects, the "court is not required to allow a pro se litigant to cure defects ad infinitum." *United States v. Hassell*, 82 F. App'x 372, 375 (5th Cir. 2003).

Here, the Court expressly identified the deficiencies in Freemon's original answer, granted him an opportunity to cure those defects by filing an amended answer on his own behalf within thirty days, and warned that failure to do so could result in sanctions, including the entry of default. Doc. 24. Even accepting Freemon's contention that he did not fully appreciate the consequences of noncompliance, his default was nevertheless willful: he was given clear notice, a defined opportunity to cure, and an explicit warning, yet chose not to act. *See, e.g., Hassell*, 82

5

F. App'x at 375 (affirming denial of motion to set aside default where *pro se* defendants "had already been given an opportunity to cure the defects and file an answer that complied with the federal rules," but "[t]hey did not do so."); *DirectTV. Inc. v. Young*, No. 4:04-CV-1118, 2005 WL 8172598, at *7 (S.D. Miss. Sept. 20, 2005) (Lee, J.) (finding default was willful where defendant was "specifically apprised that an answer would be due . . . and that [plaintiff] would seek default judgment were one not filed, and yet he did nothing."), *aff'd*, 195 F. App'x 212 (5th Cir. 2006); *Interscope Recs. v. Benavides*, 241 F.R.D. 458, 461 (W.D. Tex. 2006) (holding default was willful where defendant had "actual notice of the lawsuit in ample time to file an answer, [and] she neglected to do so with no apparent excuse other than her status as a layman."). Because the undersigned finds that Freemon's default was willful, rather than the result of excusable neglect, this factor alone is sufficient to justify denial of relief. *Dierschke*, 975 F.2 at 184.

### B. Freemon Did Not Act Expeditiously to Correct his Default.

Freemon's post-default conduct does not provide good cause to set aside the default. Although he eventually filed a motion for leave to file an amended answer, Doc. 60, that motion was not filed until June 6, 2025—more than six months after Plaintiffs requested entry of default and more than two months after the Clerk entered default against him. Doc. 25; Doc. 55. Again, Freemon contends that he "promptly requested leave to file an amended answer" once he fully understood the scope and effect of the Court's Order, which he asserts occurred only after the entry of default and the Court's Order directing Plaintiffs to move for default judgment. Doc. 83 at 1. However, the record contradicts this assertion.

6

Indeed, just days after Plaintiffs moved for entry of default in November 2024, Freemon filed a response asserting that his delay in filing an amended answer was not in bad faith but instead "stemm[ed] from [his] inability to afford counsel for the LLC." Doc. 26 at 2. That response demonstrates that Freemon understood the Court's order, the consequences of noncompliance, and a basis on which his delay might be excused. Doc. 26. Despite that understanding, however, he neither sought leave to file an amended answer nor requested additional time to do so for another six months. Doc. 60. Moreover, much like the instant motion, Freemon's motion for leave offers no explanation whatsoever for his delayed compliance with the Court's Order. *See* Doc. 60. Such "late-breaking diligence" is far from the kind of post-default conduct that courts have found to "foreclose a finding of willfulness." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 501 (5th Cir. 2015) (citation omitted); *cf., Hunsinger v. Equity of Texas, LLC,* No. 3:21-CV-802, 2021 WL 6274584, at *2 (N.D. Tex. Dec. 13, 2021) (Toliver, J.), *rep. & rec. adopted,* 2022 WL 35745 (N.D. Tex. Jan. 4, 2022) (Lynn. C.J.) (finding the defendant's default was not willful where he attested that he was "wholly unaware" of the lawsuit and upon learning of it, filed an answer within a week of procuring counsel and only five days after the Clerk entered the default).

Nor do the circumstances surrounding Freemon's filing of the instant motion suggest that his default resulted from anything other than intentional action. Although he was undisputably aware of the Clerk's entry of default on March 31, 2025, he did not move to set it aside until July 16, 2025, nearly four months later. Doc. 55; Doc. 83. Moreover, even assuming Freemon did not fully appreciate the default until the Court ordered Plaintiffs to move for default judgment on June 4, 2025, he offers no explanation for why he waited an additional month to request that it be set aside. Doc. 58; Doc. 83.

7

As Plaintiffs point out, Freemon's prolonged delay in in moving to set aside default stands in "stark contrast" to his extensive activity in this action during the same period. Doc. 94 at 12. Indeed, between the Clerk's entry of default in March 2025 and Freemon's filing of the instant motion, he filed seven other motions and four related replies. *See, e.g.,* Doc 59; Doc. 60; Doc. 61; Doc. 62; Doc. 63; Doc. 67; Doc. 80. This level of participation demonstrates that Freemon was aware of the proceedings and capable of litigating yet chose not to timely seek relief from default. See *Allstate Ins. Co. v. Toshner,* No. 1:24-CV-27, 2025 WL 2182328, at *3 (W.D. Tex. May 13, 2025) (Howell, J.), *rep. & rec. adopted,* 2025 WL 1904485 (W.D. Tex. Jul 9, 2025) (finding that the defendant's prior appearances in the case indicate "that he knows when an appearance is required and how to file documents with the Clerk.") (internal quotations and citation omitted); *Clay v. Flounderdawg, LLC,* No. 14-CA-923, 2016 WL 11570936, at *3 (W.D. Tex. May 25, 2016) (Bemporad, J.), *rep. & rec. adopted*, 2016 WL 11570937 (W.D. Tex. Jun. 29, 2016) (finding that the defendants' entry of appearance "nearly two months" after default was entered and after the plaintiffs filed their motion for default judgment indicated an intentional failure to respond). The Court struggles to find any explanation for this behavior beyond a willful disregard for the Court's orders and procedural rules.

Even resolving any doubts in favor of Freemon, *Lacy,* 227 F.3d at 292, he has failed to demonstrate that his failure to file an amended appearance in this action was the result of excusable neglect, rather than willful default, which is alone sufficient to justify the denial of relief, see *Dierschke*, 975 F.2 at 184.[3]

---

[3] Although a finding of willfulness is enough to end the inquiry, Freemon's failure to proffer a meritorious defense also supports a finding that no good cause exists to set aside the default.

## IV. CONCLUSION

For the foregoing reasons, *Defendant's Motion to Set Aside Clerk's Entry of Default*, Doc. 83, should be **DENIED**.

**SO RECOMMENDED** on February 24, 2026.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

---

*Dierschke*, 975 F.2d at 183. Freemon's sole defense—that Plaintiffs lack Article III standing to assert their claims against him, *see* Doc. 87; Doc. 88 at 2-3—lacks merit for the reasons detailed in the undersigned's Findings, Conclusions and Recommendation on the *Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Due to Lack of Standing*, Doc. 87, also entered this day. Accordingly, this factor likewise weighs against setting aside the entry of default.