# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| AMAZON CONTENT SERVICES, LLC, *et al.*, | § § | |
| PLAINTIFFS, | § | |
| | § | CASE NO. 3:24-CV-733-L (BK) |
| v. | § | |
| | § | |
| WILLIAM FREEMON, *et al.*, | § | |
| DEFENDANTS. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 36, this matter was referred to the undersigned magistrate judge for pretrial management. Before the Court is *Plaintiffs' Motion for Default Judgment,* Doc. 75. The requisites for default judgment having been satisfied in this case, the motion should be **GRANTED.**

## I. BACKGROUND

### A. Factual Background

In March 2024, Plaintiffs filed this action against Defendant William Freemon ("Freemon") and his company, Freemon Technology Industries LLC ("FTI"), alleging violations of the Copyright Act (17 U.S.C. § 101 et seq.). Doc. 1, ¶¶ 31–69. Plaintiffs—producers and distributers of filmed entertainment—allege that Freemon and FTI (collectively, "Defendants") operate an "extensive and commercially scaled network of illegal streaming services" that offers unauthorized access to Plaintiffs' copyrighted movies and TV shows on a "massive scale." Doc. 1, ¶¶ 3, 41.

According to the Complaint, this "scaled network" consists of four unauthorized online streaming services—Streaming TV Now, TV Nitro, Instant IPTV, and Cash App IPTV—along with a reseller service, Live TV Resellers (collectively, the "Infringing Services"), all of which Freemon has owned and operated, or continues to own and operate. Doc. 1, ¶ 20. Through these Infringing Services, Plaintiffs allege that Defendants provide users access to thousands of live television channels and more than 27,000 movies and 9,000 television series via video-on-demand ("VOD") service. Doc. 1, ¶ 20. Plaintiffs allege that at least 150 of their copyrighted works were included among these offerings. Doc. 1, ¶ 19.

Based on these alleged activities, Plaintiffs assert claims for direct and secondary copyright infringement under the Copyright Act (17 U.S.C. § 101 et seq.). Doc. 1, ¶¶ 75-108.

**B. Procedural Background**

Plaintiffs properly served Defendants on June 20, 2024, in the manner authorized by the Court's Order. Doc. 17; Doc. 18. On July 10, 2024, Freemon filed an answer purporting to appear on behalf of both himself and FTI. Doc. 19. However, because FTI, a legal entity, must be represented by licensed counsel, the Court struck Defendants' answer and ordered Freemon to file an amended answer individually, and FTI and the remaining Defendants to appear through counsel, by October 11, 2024. Doc. 24 at 2. The Court warned Defendants that the failure to comply or request an extension by this deadline "may result in the court imposing appropriate sanctions such as the striking of pleadings/defenses or the entry of default." Doc. 24 at 3.

After Defendants failed to appear by the deadline, Plaintiffs requested an entry of default pursuant to Federal Rule of Civil Procedure 55. Doc. 25. Although Freemon had not entered a formal appearance via an amended answer, as ordered, he opposed the request, asserting that he had shown a clear intent to defend the action and that his delay in filing an amended answer was

due to his "inability to afford counsel for the LLC," rather than willful neglect.  Doc. 26.  On March 18, 2025, in the absence of any formal appearance, the Clerk entered default against all Defendants.  Doc. 55.

On June 30, 2025, at the Court's direction, Plaintiffs moved for default judgment.[1]  Doc. 75.  Again appearing *pro se,* Freemon subsequently moved to set aside the Clerk's entry of default under Federal Rule of Civil Procedure 55(c).  Doc. 83.  Finding that Freemon's default was willful, the undersigned has recommended that his motion to set aside the default should be denied.  Doc. 116.  Accordingly, the Court now turns to Plaintiffs' motion for default judgment. Doc. 75.

## II. APPLICABLE LAW

Rule 55 authorizes a court to enter a default judgment against a defendant who fails to plead or otherwise defend against a plaintiff's claim.  FED. R. CIV. P. 55.  "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal footnote omitted).  Accordingly, a party is not entitled to a default judgment merely because the defendant is technically in default.  *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citation omitted).  Rather, courts have discretion to determine the appropriateness of

---

[1] Although Plaintiffs also named the websites and domains allegedly used by Freemon to offer infringing services as defendants in this action, Plaintiffs' instant motion seeks default judgment only against Defendants Freemon and FTI LLC.  Doc. 75 at 9 n.1.  Plaintiffs contend that Freemon and FTI LLC retain control over the identified domains and services, and the Court has found that Freemon has not effectively disputed that contention.  Because any relief against the domain defendants would be duplicative of the relief awarded against Freemon and FTI LLC, the domain defendants—instantiptv.net, streamingtvnow.com, streamingtvnow.net, tvnitro.net, cashappiptv.com, livetvresellers.com, stncloud.ltd, and stnlive.ltd—should be dismissed from this action.

3

an entry of default judgment. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In deciding whether to enter a default judgment, courts conduct a three-part analysis. *United States v. Dimas*, No. 4:24-CV-00731, 2025 WL 33466, at *2 (N.D. Tex. Jan. 6, 2025) (O'Connor, J.). First, the court considers whether a default judgment is procedurally warranted by examining several factors, including: (1) whether there are disputed material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey*, 161 F.3d at 893.

Second, the court evaluates whether the pleadings provide a sufficient basis for the judgment. *See Nishimatsu Constr. Co., v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (holding that a plaintiff must plead sufficient facts to show it is entitled to relief). The sufficiency of a plaintiff's complaint is assessed under Rule 8 of the Federal Rules of Civil Procedure. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). At this stage, the court assumes that the defaulting defendant admits all well-pleaded facts in the plaintiff's complaint, and documents attached to the complaint constitute "a part of the pleadings for all purposes." *Nishimatsu*, 515 F.2d at 1206 (citing FED. R. CIV. P. 10(c)).

Finally, the court determines what form of relief, if any, to which the plaintiff is entitled *United States v. Holland*, No. 3:17-CV-0938-B, 2018 WL 354542, at *2 (N.D. Tex. Jan. 10, 2018) (Boyle, J.) (citation omitted).

## III. ANALYSIS

### A. Default Judgment is Procedurally Warranted.

Applying the *Lindsay* factors, the Court finds that default judgment is procedurally warranted.[2]  First, as outlined above, Defendants' original Answer, Doc. 19, was stricken from the record as procedurally deficient.  Doc. 24.  By failing to timely file an amended answer in accordance with the Court's Order, Doc. 24, Defendants are deemed to "admit the plaintiff's well-pleaded allegations of fact."  *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see In re Pancake*, 106 F.3d 1242, 1245-46 (5th Cir. 1997) (noting that striking a defendant's only answer "create[s] a situation similar to that where no answer is filed, i.e., a no-answer default judgment.").  Accordingly, no issues of material fact remain for resolution.  *Nishimatsu Constr. Co.*, 515 F.2d at 1206.

Second, Defendants' repeated disregard of this Court's orders and procedural rules has caused "substantial prejudice" to Plaintiffs by hindering their ability to pursue "expeditious relief."  *Dimas*, 2025 WL 33466, at *3.  While the Court credits Freemon's initial effort to participate in this litigation, his prolonged delay in filing an amended answer—either personally or through licensed counsel for FTI—has effectively ground this case to a halt.  In its Order directing Defendants to file amended answers, the Court explicitly warned that failure to comply could result in the "imposition of sanctions, including . . . the entry of default."  Doc. 24.

---

[2] Having previously found that Plaintiffs possess standing to assert their claims under the federal copyright statute, 17 U.S.C. § 501, the Court concludes, as a threshold matter, that it has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1338(a).  Further, the Court may exercise general personal jurisdiction over Fremon, a resident of Dallas, Texas, and over FTI LLC, a Texas limited liability company with its principal place of business in Dallas, Texas.  Doc. 1, ¶ 24; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021).

Defendants were again put on notice of the consequences of noncompliance in November 2024, when Plaintiffs requested an entry of default, Doc. 25, and in March 2025, when the Clerk entered default. Doc. 55. Yet, Freemon did not seek leave to file an amended answer on his own behalf until nearly nine months after the Court's deadline. *See* Doc. 60. And, as of this writing, he has neither retained counsel for FTI, nor offered any explanation for his failure to do so. The lengthy delay caused by Defendants' default is further exacerbated by Freemon's numerous filings, submitted despite never having entered filed his amended answer, as ordered, many of which fail to comply with the Court's local rules.[3] *See* Doc 59; Doc. 60; Doc. 61; Doc. 62; Doc. 63; Doc. 67; Doc. 80. By both delaying the resolution of this action and requiring Plaintiffs to respond to procedurally improper filings, his conduct has caused substantial prejudice to Plaintiffs. *See F.M.D. Holdings, LLC v. Regent Fin. Corp.*, No. , 2021 WL 5883136, at *5-6 (N.D. Tex. Dec. 10, 2021) (Hendrix, J.) (concluding that defendants' failure to file a valid answer, despite explicit warnings of regarding their noncompliance, constituted ample evidence of prejudice).

The third, fourth, and sixth *Lindsay* factors likewise weigh in favor of default judgment. The Court has already undertaken a Rule 55(c) analysis and has determined that Defendants' failure to file responsive pleadings was willful, rather than the result of excusable neglect. *See* Doc. 116. Defendants present no new facts or circumstances that would alter that conclusion

---

[3] Although it does not alter the Court's conclusions, Defendants' conduct has unnecessarily complicated and prolonged this litigation. For example, after being expressly advised that he could not file motions on behalf of FTI or the other entity defendants, *see* Doc. 24, Freemon persisted by filing a motion asserting defenses on their behalf, which was subsequently stricken from the record. Doc. 59; Doc. 64. In addition, although he was informed of the Court's local rules requiring movants to confer with opposing counsel and file certificates of conference, *see* Doc. 57, Freemon failed to comply with these requirements in all but one of his subsequent motions, including his untimely motion for leave to file an amended complaint. *See* Doc. 59; Doc. 60; Doc. 61; Doc. 62; Doc. 63; Doc. 67; Doc. 80; Doc. 83; Doc. 87; *but see* Doc. 109.

under the more demanding standard of Rule 60(b).  *See* FED. R. CIV. P. 60(b).  Instead, in opposing the instant motion, Defendants merely reassert arguments related to willfulness and Plaintiffs' Article III standing that have already been considered and rejected by the Court.  *Compare* Doc. 88 at 4-5, *with* Doc. 83 at 1-2. *See also* Doc. 117 (recommending that Defendant's motion to dismiss for lack of subject matter jurisdiction be denied).  Because Defendants do not present, and the Court is not aware of, any circumstances that would constitute good cause to set aside the default, these considerations favor an entry of default judgment.

Finally, the Court concludes that present circumstances warrant the harshness of a default judgment.  Defendants have now been in defiance of Court's Order to file amended answers for over a year.  *See* Doc. 24.  Although Freemon has made a belated attempt to participate in this action on his own behalf, *see* Doc. 60, he has neither retained counsel for FTI nor provided any explanation or indication that he intends to do so.  Rather than comply with the Court's Order requiring FTI to be represented by counsel, he continues to file a flurry of motions in an apparent effort to evade that requirement.  In light of this "clear record of contumacious conduct," the Court finds that no alternative sanction would suffice.  *Sun Bank of Ocala*, 874 F.2d at 277; *see, e.g., F.M.D. Holdings*, 2021 WL 5883136, at *5 ("When a defendant's conduct impedes the adversary process—and for the past year the defendants have done little else—a default judgment is appropriate.").

In sum, because all six *Lindsay* factors favor default, default judgment is procedurally warranted.

**B. The Pleadings Present a Sufficient Basis for Entry of Default Judgment.**

Even when default is procedurally warranted, the pleadings must nevertheless establish a sufficient basis for relief. *Nishimatsu*, 515 F.2d at 1206. In making this determination, courts look to the standard set out in Federal Rule of Civil Procedure 8(a)(2). *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (relying on Rule 8 to determine the sufficiency of a complaint in a default judgment action); FED. R. CIV. P. 8(a)(2) (establishing the requirements for a well-pleaded claim for relief). Under this standard, plaintiff's factual allegations, taken as true, "need only be enough to raise a right to relief above a speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although "detailed factual allegations are not required" to satisfy Rule 8's "low threshold," a mere "formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the Court can draw no inference beyond the mere possibility of misconduct, the complaint falls short of demonstrating that the plaintiff is plausibly entitled to relief. *Id.* at 678.

Here, Plaintiffs assert claims for both direct and contributory copyright infringement. Doc. 1, ¶¶ 75-108. Because the Court finds that Plaintiffs have sufficiently stated a claim for direct infringement, it need not reach the alternative claims for contributory or induced infringement.

1. Plaintiffs' Adequately Allege a Right to Relief for Copyright Infringement.

To prevail on a claim for copyright infringement, a plaintiff must establish (1) "ownership of a valid copyright," and (2) "'copying' by the defendant." *Batiste v. Lewis*, 976

F.3d 493, 501 (5th Cir. 2020) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  The first element, copyright ownership, is shown by "proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Id.* (internal quotation and citation omitted).  A timely obtained certificate of registration constitutes prima facie evidence of both the copyright's validity and the registrant's ownership. *Id.* (citation omitted).

> *i. Ownership of the Copyrights.*

Plaintiffs provide a representative list of 125 works, which they allege were infringed by Defendants.  Doc. 1, ¶ 19; Doc. 1-1 at 1-7.  For each work, Plaintiffs identify the registered copyright owner(s), the corresponding registration number, and the date of registration.  Doc. 1-1 at 1-7.  Although Plaintiffs do not attach copies of the registration certificates, alleging the registration numbers and ownership of the works is sufficient at this stage to plead ownership. *See, e.g., Malibu Media, LLC v. Dhandapani*, No. 3:19-cv-1300, 2020 WL 6120175, at *2 (N.D. Tex. Feb. 12, 2020) (Lynn, C.J.) (finding ownership adequately pleaded where plaintiff provided the copyright registration numbers, the effective dates of those registrations, and the dates of first publication).  Accordingly, Plaintiffs have adequately alleged their ownership of the copyrighted works.

> *ii. Violation of Plaintiffs' Exclusive Rights.*

As to the second element, the Complaint alleges that Defendants violated Plaintiffs' exclusive right of reproduction under 17 U.S.C. § 106(1) and performance under § 106(4).  Doc. 1, ¶¶ 51-54, 75-79.  To allege unlawful reproduction, a plaintiff must show "factual copying that is legally actionable." *Dhandapani*, 2020 WL 6120175, at *2 (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994), *opinion supplemented on denial of*

*reh'g*, 46 F.3d 408 (5th Cir. 1995).  Factual copying requires a showing that the alleged infringer

used the copyrighted material to create his own work and can typically be inferred when the

alleged infringer had access to the copyrighted works and there is "probative similarity" between

the two.  *Id.* (citation omitted).  An inference of access exists if "the two works are so *strikingly*

similar as to preclude the possibility of independent creation."  *Peel & Co. v. The Rug Mkt.*, 238

F.3d 391, 395 (5th Cir. 2001) (emphasis in original).  Finally, two works are probatively similar

if they share any similarities, whether substantial or not, that would not ordinarily be expected to

arise independently in each work.  *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394

F.3d 357, 370 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*,

559 U.S. 154 (2010)).

The Complaint alleges that Freemon made copies of Plaintiffs' copyrighted works to

"amass a video-on-demand library ("VOD") library," which he then transmitted to internet

subscribers through multiple infringing services.  Doc. 1 at 78.  Freemon does not dispute that

the identified Infringing Services (e.g. Streaming TV Now, Instant IPTV, etc.) offered digital

copies of Plaintiffs' copyrighted works.  *See* Doc. 88 at 2-3.  Instead, he contests only his

connection to the infringement, arguing that Plaintiffs have not sufficiently alleged his ownership

or control of the domains and services used to redistribute the works.  Doc. 88 at 2-3.  The Court

has already rejected that argument.  *See* Doc. 117.

As set forth in detail in the undersigned's prior Recommendation addressing Freemon's

Motion to Dismiss, Doc. 87, the record contains extensive allegations and evidence linking

Freemon and his LLC to the domains and services that reproduced Plaintiff's copyrighted works.

Doc. 117 at 7-11.  Although that analysis need not be repeated at length here, in sum, Freemon

has admitted on the record that he owned Streaming TV Now's domain during at least a portion

of the period that Plaintiffs allege the services' infringement was ongoing.  *See* Doc. 27 at 2. The Complaint further alleges that the other accused services shared identical pricing, promotional materials, cross-references, and were located at the same IP address as Streaming TV Now, which, taken together with his admitted ownership, sufficiently pleads his control over each of the accused platforms.  Doc. 1, ¶¶ 34-40, 56-69; *see also Sony Pictures Home Ent., Inc. v. Lott*, 471 F.Supp.2d 716, 721 (N.D. Tex. 2007) (finding the record was sufficient to support liability where it showed that the defendant was assigned the same IP address used to download and distribute plaintiffs' copyrighted works at the time of the alleged infringement).  Finally, Plaintiffs also allege that the Services' front-end websites all connected to the same back-end web-players, IP addresses, servers, and streaming sockets used to access the infringing content, thereby supporting Freemon's liability for reproducing and distributing Plaintiffs' copyrighted works.  Doc. 1, ¶¶ 34-40.

These allegations collectively show that Freemon copied and uploaded Plaintiffs' copyrighted works to the Infringing Services for redistribution.  Because "it is well-established that unauthorized downloading and uploading of copyrighted media files," such as motion pictures and TV shows, "is a violation of the copyright holders' exclusive rights to reproduce and distribute the files," the Complaint adequately states a claim for the unlawful reproduction of Plaintiffs' copyrighted works.  *Lott*, 471 F.Supp.2d at 722 (citing *A & M Recs. Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001)).

Based on the same allegations, the Court finds that Defendants' have also violated Plaintiffs' exclusive rights of public performance.  17 U.S.C. § 106(4).  The right of public performance includes the ability to "transmit or otherwise communicate a performance . . . of the work . . . to the public, by means of any device or process," and courts consistently recognize

that the unauthorized transmission of motion pictures and live television channels to subscribers over the internet infringes that right. *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 435-36, 134 S. Ct. 2498 (2014) (citing 17 U.S.C. § 101); *Khalid*, 2021 WL 765709, at \*4. By alleging that Freemon offered streaming of thousands of live television channels and a large VOD library while funneling subscriber payments through FTI LLC, the Complaint sufficiently states a claim that the Defendants violated Plaintiffs' right of public performance.

Taking the allegations in the Complaint as true, Plaintiffs have sufficiently established that Defendants infringed upon Plaintiffs' exclusive rights in their copyrighted works. Accordingly, Plaintiffs' motion, Doc. 75, should be granted as to Defendants' liability for copyright infringement in violation of 17 U.S.C. § 106, 501(b).

### C. Plaintiffs are Entitled to Relief.

Finally, the Court must determine what form of relief, if any, Plaintiff should receive. *See U.S. for Use of M-CO Constr., Inc. v. Shipoco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("A default judgment . . . establishes the defendant's liability. But it does not establish the amount of damages."). Ordinarily, damages will not be awarded without an evidentiary hearing. *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998). But, when the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *Id.* (citing *James v. Frame*, 6 F.3d 307, 309-10 (5th Cir. 1993) (noting that Rule 55(b)(2) "explicitly grants [a] district court wide latitude" in determining damages in a default judgment)). Nevertheless, the relief available is limited to that requested in the pleadings. *See* FED. R. CIV. P. 54(c) ("[A] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Thus, "[t]he burden is on the plaintiff to provide an evidentiary basis for the damages it seeks." *United*

*States v. Garza*, No. 3:19-CV-0188, 2019 WL 4452147, at *4 (N.D. Tex. Aug. 22, 2019)

(Ramirez, J.) (citation omitted).

Plaintiffs seek entry of default judgment awarding (1) statutory damages for copyright

infringement; (2) injunctive relief; (3) post-judgment interest; and (4) attorneys' fees. Doc. 75 at

21. Because the requested relief does not differ in kind from, or exceed in amount, what is

demanded in the pleadings, *see* Doc. 1 at 28-29, the Court need only determine whether the

requested relief is warranted based on the pleadings, supporting submissions, and the governing

law. *Leedo*, 157 F.3d at 414.

    1.  <u>Statutory Damages</u>

Plaintiffs seek statutory damages totaling $18,750,000, which reflects the statutory

maximum of $150,000 for each of the 125 representative works infringed by Defendants. Doc.

75 at 14.

Under the Copyright Act, a prevailing plaintiff in an infringement action may elect to

recover either actual or statutory damages. *In re Isbell Records, Inc.*, 774 F.3d 859, 873 (5th Cir.

2014) (citing 17 U.S.C. § 504(a)). If the plaintiff elects statutory damages, Section 504(c)(1)

authorizes an award of "not less than $750 or more than $30,000" for *each* infringed work. 17

U.S.C. § 504(c)(1). If, however, the infringement was willful, Section 504(c)(2) provides that

"the court in its discretion may increase the statutory award of statutory damages to a sum of not

more than $150,000." 17 U.S.C. § 504(c)(2). A defendant acts "willfully" within the meaning

of § 504(c)(2) when "he knows his actions constitute an infringement," regardless of whether the

conduct was malicious. *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988).

Moreover, courts have held that willfulness may be inferred where a defendant was put on notice

of its infringement "but nevertheless persisted in their conduct." *EMI April Music Inc. v. Jet*

*Rumeurs, Inc.*, 632 F.Supp.2d 619, 625 (N.D. Tex. 2008); *Malaco Inc. v. Cooper*, No. 3:00-CV-2648, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002) ("Willfulness may be inferred if notice of a valid copyright was given prior to infringement.") (citing *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) ("[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness.").

       i. *Defendants' Infringement was Willful.*

Here, Plaintiffs allege that Freemon knowingly sold unauthorized subscription access to "thousands of movies and TV shows that are typically available only through licensed platforms." Doc. 75 at 15; Doc. 1, ¶¶ 44, 89.  In February 2023, Plaintiffs sent Freemon a notice letter demanding that he cease operation of the Infringing Services.  Doc. 1, ¶ 70.  Rather than comply, Plaintiffs contend that Freemon attempted to obscure his connection to the network of infringing sites, including by making "unsubstantiated claims" that he had transferred ownership of the domains.[4]  Doc. 1, ¶¶ 40, 70-71.  Plaintiffs further allege that despite his attempts to distance himself from the sites, however, Freemon continued to operate four infringing services through at least January 2024, with one service remaining active until March 2024, when this action was filed.  Doc. 1, ¶ 62; Doc. 76-5, ¶¶ 28, 39.

At a minimum, this record demonstrates that Freemon knew he was violating Plaintiffs' exclusive rights under the Copyright Act, yet he continued to offer infringing content on a large scale for more than a year.  "Such knowing violation of copyright law is properly classified as "willful" infringement."  *Jet Rumeurs*, 632 F.Supp.2d at 625; *See, e.g., DISH Network L.L.C. v.*

---

[4] As set forth in detail in the undersigned's recommendation regarding Freemon's Motion to Dismiss, Plaintiffs present substantial evidence that Freemon maintained control of the Infringing Domains and Services through 2024.  *See* Doc. 117 at 7-8.

*Khalid*, No. 19-4563, 2021 WL 765709, at *7 (S.D. Tex. Feb. 23, 2021) (Miller, J.) (finding willfulness could be inferred where the plaintiff alleged that "at least some of the infringing activity occurred after" the defendant received notice of its infringement). Because Plaintiffs have sufficiently pled a willful infringement, Section 504(c)(2)'s increased statutory damages cap is applicable here.

> ii. *A Maximum Statutory Damages Award is Warranted.*

The Copyright Act provides courts with "wide discretion" in setting damages within the range defined by the statute. *Xanthas*, 855 F.2d at 237. In determining an appropriate award within the statutory range, courts consider several factors, including the infringer's state of mind, the value of the copyright, the expenses avoided and profits gained as a result of the infringement, and the deterrent effect of the award on the defendant and third parties. *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F.Supp. 543, 560 (N.D. Tex. 1997); *Future World Elecs., LLC v. Over Drive Mktg., LLC*, No. 3:12-CV-2124, 2013 WL 595089, at *4 (N.D. Tex. Nov. 5, 2013) (Boyle, J.).

Here, Plaintiffs seek a maximum statutory damages award in the amount of $150,000 per work, for a total of $18,750,000. Doc. 75 at 21. Although maximum statutory damages are not appropriate in every case in which they are available, the Court finds that the scope, duration, and nature of the Defendants' infringement warrant such an award here.

Plaintiffs estimate that Defendants' operation of the Infringing Services spanned four years, from 2020 through 2024, during which the Services provided subscribers access to tens of thousands of movies, TV shows, and live channels. Doc. 1, ¶¶ 43-44. In the year before commencing this action, Plaintiffs estimate that these direct-to-consumer Services received nearly 500,000 visits over the course of a year, with an average of over 45,000 visits per month.

Doc. 1, ¶ 41.  Although the total number of times Plaintiffs' works were redistributed and the complete universe of works infringed remains unknown, Plaintiffs have identified at least 125 copyrighted works that Defendants made available through their Services, including relatively recently released and award-winning films like Universal Studios' *Oppenheimer*.  Doc. 1, ¶ 14. In addition to operating direct-to-consumer streaming services, Plaintiffs have also tied Defendants to a reseller service that offers bulk subscription packages to intermediaries for downstream resale to end users.  Doc. 1, ¶¶ 63-69.

Although Plaintiffs do not provide an estimate of their lost revenue, the figures alleged in the Complaint indicate that Freemon and his company likely generated substantial profits from their infringing activity.  Each of Freemon's Services offered subscription packages ranging from $20 per month to $150 per year.  Doc. 1, ¶ 46.  Even under Plaintiffs' conservative assumption that between 1% and 5% of the sites' 500,000 annual visits converted to $150 yearly subscriptions, this would amount to an annual revenue of $750,000 to $3,750,000.  Doc. 1, ¶ 42 n. 10.  Although Freemon's profits cannot be determined with mathematical certainty on this record, the Court notes that his failure to properly defend the case "effectively preclud[ed] Plaintiffs] from calculating actual damages and profits."  *See Khalid*,  2021 WL 765709, at * 7 (observing that the defendant "should not be rewarded for his failure to defend" the infringement action and inferring "substantial profits" from monetized channels which garnered "immense viewership.").  Accordingly, it is reasonable to infer that by offering thousands of channels and movies with no production cost, Freemon earned substantial profits from his infringement.

Given the extensive and ongoing nature of Defendants' willful infringement, coupled with the substantial profits they likely obtained at Plaintiffs' expense, the Court finds that awarding the maximum statutory damages is warranted to punish Defendants and to deter similar

misconduct by others.  Indeed, other Courts have found the statutory maximum appropriate in cases involving similar circumstances.  *See, e.g., Khalid,* 2021 WL 765709, at *7 (awarding maximum statutory damages on default judgment for a total of $16,800,000 where the defendant offered protected channels to viewers on a "massive scale" for a period of five to nine years, willfully defied notices of infringement, and failed to participate in the infringement action); *Amazon Content Servs., LLC et al v. Set Broad., LLC, et al*., 2019 WL 7856766, at *4 (C.D. Cal. 2019) (finding maximum statutory damages "particularly appropriate" where the defendant "had failed to mount any defense or participate in discovery," and plaintiffs identified a set of 51 infringed works, including movies still in theatres, which likely represented a "small sliver of the actual work infringed").   Here, as in those cases, the Court finds that the maximum award is necessary to serve the Act's purpose of putting the Defendants and other infringers "on notice that it costs less than to obey the copyright laws than to violate them." *Jet Rumeurs*, 632 F.Supp.2d at 625.

Accordingly, Plaintiffs should be awarded $150,000 per copyrighted work under 17 U.S.C. § 504(c)(2), and Defendants should be ordered to pay the total amount of $18,750,000 in statutory damages.

2.  Permanent Injunction

In addition to monetary damages, Plaintiffs also request a permanent injunction that (1) enjoins Defendants and all persons acting in concert with them from linking to, distributing, reproducing, copying, uploading, making available for download, indexing, exhibiting, publicly performing, or otherwise exploiting any motion picture or other audiovisual work copyrighted by Plaintiffs; (2) enjoins Defendants from enabling, facilitating, permitting, soliciting, encouraging, or otherwise inducing any third party to engage in the foregoing acts; and (2) requires Freemon

to transfer the Infringing Domains, and any additional domain names associated with Freemon's operation of the infringing services, to Plaintiffs' control.  Doc. 75-2 at 1-3.

Under 17 U.S.C. § 502(a), a court has the power to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quoting 17 U.S.C. § 502(a)).  To obtain a permanent injunction in copyright cases, the plaintiff must show: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest."  *Arista Records, Inc. v. Kabani*, No. 3:03-CV-1191, 2004 WL 884445, at *4. (N.D. Tex. Apr. 23, 2004) (Sanders, J.) (citing *DSC Comm'ns Corp. v. DGI Tech. Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).

Here, all four requirements are satisfied.  First, because a default judgment conclusively establishes liability, Plaintiffs will have prevailed on the merits.  *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  Second, Plaintiffs have no adequate remedy at law because the imposition of monetary damages does not prevent future infringement by the Defendants. *Mouse on Tha Track LLC v. Parg Mgmt. LLC,* No. 3:18-CV-2980, 2019 WL 6970946, at *6 (N.D. Tex. Nov. 13, 2019) (Ramirez, J.), *rep. & rec. adopted,* 2019 WL 6915726 (N.D. Tex. Dec. 18, 2019).  Third, there has been no showing that the Defendants would suffer any harm from a permanent injunction which prevents continued unlawful infringement.  Finally, in light of need to uphold the integrity of copyright laws, the Court concludes that a permanent injunction is abundantly in the public interest.  *Lakedreams v. Taylor,* 932 F.2d 1103, 1110 (5th Cir. 1991).  Accordingly, because Plaintiffs' proposed injunctions are narrowly tailored to remedy their specific harms and to prevent future infringement, Plaintiffs' request for a permanent injunction should be granted.

3.  Post-Judgment Interest

Plaintiffs also seek post-judgment interest.  Under 28 U.S.C. § 1961(a), "[p]ost-judgment interest is awarded as a matter of course*." Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)).  Accordingly, Plaintiffs' request for post-judgment interest should be granted and awarded at the applicable federal rate[5] from the date of judgment until it is paid in full.

4.  Attorneys' Fees

Lastly, Plaintiffs request an award of attorneys' fees.  Section 505 of the Copyright Act "expressly provides for awards of attorney's fees as well as costs." 17 U.S.C. § 505.  Although attorneys' fees are awarded at the trial court's discretion, "they are the rule rather than the exception and should be awarded routinely." *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (alteration in original).  Plaintiffs are entitled to the attorneys' fees incurred in defending their legal rights against Defendants' infringements.  Accordingly, the Court should award Plaintiffs' reasonable attorneys' fees in an amount to be determined by post-judgment motion.

## IV. CONCLUSION

For the foregoing reasons, *Plaintiffs' Motion for Default Judgment,* Doc. 75, should be **GRANTED**, and Plaintiffs should be awarded statutory damages of $18,750,000, post-judgment interest at the applicable federal rate from the date of the judgment until paid in full, and reasonable attorneys' fees in an amount to be determined upon submission of a post-judgment

---

[5] The statutory post-judgment interest rate can be found at: http://www.txnd.uscourts.gov/postjudgment-rates.

motion and supporting documentation.  In addition, the Court should enter a permanent injunction against Defendants consistent with Plaintiffs' request.

SO RECOMMENDED on February 25, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).